IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RUBY N. FRAISER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-2505 |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | | |

******

**MEMORANDUM OPINION**

Pending in this medical malpractice case is Defendant's partial motion to dismiss brought pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The relevant issues have been fully briefed, and a motions hearing was held on April 28, 2017. For the foregoing reasons, Defendant's motion is denied.

**I.    BACKGROUND**

On April 1, 2013, Plaintiff Ruby N. Fraiser was diagnosed by chest x-ray with multiple pulmonary nodules. Her pulmonologist at Walter Reed National Military Hospital, Dr. Michael Perkins, was concerned that the nodules could be malignant. ECF No. 1 at 4. He therefore referred Plaintiff for a wedge resection and biopsy. *Id.* On May 13, 2013, Plaintiff arrived at Walter Reed's Ambulatory Procedure Unit and was taken to the operating room for a robotic-assisted wedge resection of the right upper lobe of her lung which was performed by Capt. John S. Thurber, a cardio-thoracic surgeon at Walter Reed. While she was under anesthesia, Dr. Thurber biopsied one nodule which Dr. Muir and Justin M. Wells, MAJ, MC, then interpreted by frozen section pathology as cancerous, specifically an adenocarcinoma. *Id.*

This diagnosis prompted Cpt. John S. Thurber, to perform a right upper lobectomy immediately, thus causing Plaintiff to lose her upper lung. As a result of the surgery, which was complicated by her pre-existing lung condition, Frazier experienced a significant decrease in lung function. Frazier learned after the surgery that the frozen section pathology interpretation obtained during Plaintiff's May 13, 2013 surgery was incorrect, that she did not have cancer, and the upper lobe of her lung should not have been removed. *Id.* at 5.

On May 11, 2016, Plaintiff filed a claim with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* After Plaintiff elected to waive arbitration, HCADRO issued an Order of Transfer of Plaintiff's case to this Court. ECF Nos. 1-5, 1-6. On March 14, 2017, the United States filed a partial motion to dismiss for lack of jurisdiction for certain perceived deficiencies in the Plaintiff's administrative claim filed with the Department of the Navy pursuant to the FTCA. ECF No. 23. In the same motion, the United States urges dismissal of any claims that are based upon the actions or omissions of Dr. Perkins or Dr. Thurber because, in the Government's estimation, the Certificate of Merit filed pursuant to the Maryland Health Care Malpractice Act does not reach these doctors. *Id.*

## II. STANDARD OF REVIEW

Under Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure, the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff bears the burden of proving that the Court retains jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003). The Court may examine evidence "beyond the pleadings" to decide whether subject matter jurisdiction exists without converting the proceeding to one for summary judgment, but it must presume that

2

the factual allegations in the complaint are true. *See id.*; *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Alternatively, when ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A court may also consider documents to the complaint as exhibits, *see* Fed. R. Civ. P. 10(c), and documents "submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## III.     ANALYSIS

### A.     The FTCA's Notice Requirement

The United States first argues that the claims arising from Drs. Thurber and Perkins' acts or omissions must be dismissed for lack of subject matter jurisdiction because Plaintiff provided insufficient notice pursuant to the Federal Tort Claims Act. Under the FTCA, Congress has waived the United States' sovereign immunity and subject itself to tort liability for claims "for money damages . . . for injury or loss of property, or personal injury or death caused by the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" when certain conditions are satisfied. 28 U.S.C. § 1346(b)(1). In exchange for such waiver of immunity, the FTCA demands, as a "key jurisdictional prerequisite to filing suit," that the Plaintiff present her administrative claim to the United States within two years of the incident. *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000). A claim is presented "when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident." 28 C.F.R. § 14.2(a). If the plaintiff fails to exhaust these administrative remedies, her claim must be dismissed for lack of subject matter jurisdiction. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986).

The Fourth Circuit Court of Appeals has explained that notice of an FTCA claim "must be sufficiently detailed so that the United States can 'evaluate its exposure as far as liability is concerned' . . . [and] must provide a sufficient factual predicate so that [the] claim can be investigated." *Drew v. United States*, 217 F.3d 193, 198 (4th Cir. 2000) (internal citations and some internal quotation marks omitted), *aff'd en banc by equally divided court*, 231 F.3d 927 (4th Cir. 2000). However, a claimant need not "provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery . . . or every factual detail that might be relevant . . . . In short, the amount of information required is 'minimal.'" *Id.* (quoting *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999) (citations and internal quotation marks omitted)).

Here, the United States argues that Plaintiff's Standard Form 95 is deficient with respect to Drs. Thurber and Perkins because the Plaintiff did not provide the Agency with notice that it should assess liability based on the acts of Thurber and Perkins. *See* ECF No. 23 at 3. The United

4

States specifically points to the Agency's acceptance of Plaintiff's administrative claim as alleging personal injuries due to the "misrepresentation of adenocarcinoma." ECF No. 23-2 at 1. According to the United States, the language contained within the acceptance conveys the Agency's understanding that Plaintiff's claim is a narrow attack on the conduct of Dr. Muir—the pathologist who misdiagnosed Plaintiff's nodules as malignant tumors— and not the conduct of Drs. Perkins or Thurber. *See* ECF No. 23 at 3–4. The United States also notes that Plaintiff never attempted to correct that Agency's narrow interpretation or amend her claim at any point. ECF No. 23 at 4. Accordingly, it submits that this Court maintains jurisdiction only over potential liability based upon Dr. Muir's alleged negligence. *Id.* at 3.

Plaintiff counters that the SF-95 notifies the United States that her claims indeed cover the alleged negligence of all three doctors. Plaintiff is correct. In her form SF-95, Plaintiff identifies Dr. Perkins as the health care provider who expressed concern about the nodules' potential malignancy, and goes on to list the health care providers' negligent conduct, including conduct that could be attributed to Dr. Perkins' initial diagnosis. For example, it states that the United States, through its agents, breached the applicable standard of care by, *inter alia*, "failing to perform appropriate pre-operative evaluations to determine the nature and severity of Ruby N. Fraiser's right pulmonary nodules." *See* 26-1 at 3–5. The SF-95 also identifies Dr. Thurber as the cardiothoracic surgeon that performed the operation on Plaintiff's lung and alleges that the United States, through its agents, failed to employ "appropriate treatments and procedures to correct" her pulmonary nodules. *Id.* at 5.

Plaintiff's SF-95 form also alleges specific acts or omissions of each health care provider named in her complaint and when these alleged negligent acts occurred. Thus, Plaintiff has provided the "minimal" amount of information the FTCA requires. *Drew*, 217 F.3d at 198.

Tellingly, the United States does not point to any legal authority that would require a plaintiff to take steps to correct an Agency's own narrow interpretation of the plaintiff's administrative claim. Therefore, this Court has subject matter jurisdiction over Plaintiff's claims against the United States for Drs. Muir, Perkins, and Thurber's alleged malpractice.

> **B.  Whether Plaintiff Met the Maryland Health Care Malpractice Claims Act's Conditions Precedent Requirements Before Filing this Lawsuit**

The United States alternatively argues that any negligence claims arising from the conduct of Dr. Perkins or Dr. Thurber must be dismissed under Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to comply with the Certificate of Merit provision of the Maryland Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01. *See* ECF No. 23 at 4–6. Notably, the United States maintains that its motion is *not* based on Plaintiff's failure to "identify Dr. Perkins or Dr. Thurber in a certificate of merit," but rather is more narrowly "premised on the fact that plaintiff never submitted **any** certificate of merit and report from a pulmonologist or cardiothoracic surgeon attesting to the breach of the standard of care." ECF No. 27 at 2. Because the Certificate of Merit on its face is submitted by a qualified expert with experience in the fields of medicine related to Drs. Thurber and Perkins as applied to the claims in this case, the United States' motion must be denied.

The Maryland Health Care Malpractice Claims Act ("HCMCA") establishes a state administrative claims procedure relating to malpractice claims. It requires a putative plaintiff to first file any medical malpractice claim with the Director of HCADRO. Md. Code Ann., Cts. & Jud. Proc. §§ 3–2A–03, 3–2A–04. HCMCA further provides that such an action "shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the

6

complaint." *Id.* § 3–2A–04(b)(1)(i). "The filing of the required Certificate and report by a claimant is not merely a procedural rule, but is a condition precedent to bringing a medical malpractice lawsuit in this Court or the Maryland state courts." *Willever v. United States*, 775 F. Supp. 2d 771, 777 (D. Md. 2011); *Carroll v. Konits*, 400 Md. 167 (2007); *Kearney v. Berger*, 182 Md. App. 186, 194–95 (2008).

At the outset, it bears noting that neither Dr. Thurber nor Dr. Perkins was named as an individual defendant. Rather, the only named Defendant is the United States, and the United States makes no argument that the Certificate fails to preserve suit against it. Rather, the question before the Court is whether Plaintiff's Certificate of Merit is deficient as to Drs. Thurber and Perkins who are not named as defendants, and if so, the appropriate remedy to follow.

Plaintiff filed a Certificate of Merit and report to HCADRO supplied by pathologist, Dr. Gerald Berry. *See* ECF No. 23-4.[1] Dr. Berry's Certificate expressly states that "as a direct result and proximate cause of the violations of the standards of care by the Defendant/Health Care Provider, United States of America, through its duly authorized [agents] at Walter Reed National Military Medical Center, . . . the Claimant, Ruby Fraiser was injured." ECF No. 23-3 at 2. Dr. Berry's accompanying report further explains that Plaintiff arrived at Walter Reed's Ambulatory Procedure Unit on May 13 for a robotic-assisted wedge resection of the right upper lobe of her lung. Dr. Muir, the hospital pathologist, misinterpreted Ms. Fraiser's biopsied nodule as cancerous. Consequently, Dr. Thurber, the cardiothoracic surgeon, and Dr. Perkins, the treating physician, then relied on Dr. Muir's diagnosis and Plaintiff's surgery was converted to a lobectomy. As a result, Dr. Berry concludes that the applicable standard of care was violated when Walter Reed's physicians "caus[ed], and/or contribut[ed] to cause, the Claimant, Ruby

---

[1] Plaintiff also filed a Certificate of Merit and Report supplied by board-certified pulmonologist, Dr. James Lamberti, but only related to Plaintiff's damages, and so this Court will not consider Dr. Lamberti's Certificate in its analysis. ECF No. 23-5.

7

Fraiser, to suffer right upper lobectomy that she would not have otherwise suffered." ECF No. 23-3 at 5.

The Government does not dispute that Dr. Berry's certificate is adequate as to the named Defendant, the United States. *Cf. Carroll v. Konits*, 400 Md. 167, 207 (2007). Rather, the Government urges the Court to dismiss any theory of negligence predicated on the acts or omissions of Drs. Thurber and Perkins because Dr. Berry is not properly qualified in a specialty related to that of the two doctors in question. ECF No. 23 at 5. Absent further fact discovery, the Government cannot sustain its burden in this regard.

Section 3-2A-02 requires that the certifying expert must have had "clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related field of health care, or in the field of health care in which the defendant provided treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action" and, subject to certain exceptions, "if the defendant is board certified in a specialty," must be "board certified in the same or a related specialty as the defendant." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)(ii). Maryland courts have explained that the word "related", as used to modify the term "specialty," "embraces fields of health care and board certification specialties that, in the context of the treatment or procedure in a given case, overlap." *DeMuth v. Strong*, 205 Md. App. 521, 544 (2012). *See also Heinbaugh v. Garrett County Mem. Hosp.*, 207 Md. App. 1 (2012).

Putting to one side that the specialty of the *defendant* is elusive where, as here the Defendant is the institution itself, *see e.g. D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md. App. 631, 646–47 (2004), the United States has failed to persuade this Court at this stage that Dr. Berry's specialty does **not** overlap with Drs. Thurber and Perkins as to the misdiagnosis and

related treatment. The "treatment or procedure" at issue was the misdiagnosis of malignancy and related treatment. Dr. Berry attests that he is board-certified in anatomic pathology, which is generally speaking the branch of medical science involved in the examination of tissues and organs to study and diagnose disease. Dr. Berry also certifies that he has taught pathology in the specialties of surgical pathology, pulmonary pathology and cardiac pathology. ECF No. 23-4 at 2. Thus, while Dr. Berry is not a board-certified pulmonologist like Dr. Perkins, or a cardiothoracic surgeon like Dr. Thurber, he attests to experience in the specific aspect of these fields at issue in this case—the diagnosis of disease found in the body's respiratory system. Accordingly, at the motion to dismiss stage, where factual inferences are construed in the light most favorable to Plaintiff, Dr. Muir appears qualified to opine on the standard of care applicable to Drs. Thurber and Perkins' role in Plaintiff's alleged misdiagnosis and related treatment. Dr. Berry likely will not be qualified to opine beyond that overlapping area of specialty, *Cf. Craddock v. Manson*, No. MJG-13-3482, 2015 WL 3654464, at *3 (D. Md. June 11, 2015), but the contours of that limitation in this case cannot be properly defined until after expert discovery concludes. *See Nance v. Gordon*, 210 Md. App. 26, 45 (2013) (reversing grant of summary judgment on question of overlapping specialties based on deposition testimony of certifying expert and defendant).

Along these lines, it bears noting that the Maryland legislature contemplated that discovery may be necessary on the Certificate. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04 (stating that "[d]iscovery is available on the basis of the [C]ertificate"). *Cf. Carroll v. Konits*, 400 Md. 167, 209 (2007) (Greene, J., dissenting) (explaining that the legislature intended for parties to take discovery on the information in the Certificate); *Debbas v. Nelson*, 389 Md. 364, 383–85 (2005) (post-discovery attacks on Certificate of Qualified Expert Requirement permitted if the

challenge is based upon a statutory prerequisite for a valid certificate and only examines the circumstances in existence at the time of the Certificate's filing). Consequently, the Court denies the Government's motion and will allow expert discovery to proceed. After a more robust factual record is developed as to Dr. Berry's training, education and experience, as well as the Plaintiff's expected case, the Government may wish to revisit at summary judgment whether Dr. Berry's area of specialty overlaps with Drs. Thurber and Perkins "in the context of the 'treatment or procedure' at issue" in Plaintiff's case. *Nance*, 210 Md. App. at 40.

A separate Order will follow.

| | |
|---|---|
| 5/1/2017 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |